IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

DEXTER THOMPSON, as Personal )
Representative of the Estate of )
TROY HOWARD THOMPSON, )
Deceased, )
)
    Plaintiff, )
)
v. ) Case No. 13-CV-824-CVE-PJC
)
TCI PRODUCTS CO. and )
JOHN DOES I THROUGH X, )
)
    Defendants. )

## OPINION AND ORDER

Before the Court are Plaintiff's Amended Motion to Quash Subpoena [Dkt. No. 28], and Defendant's Motion to Quash Plaintiff's Deposition Errata Sheet [Dkt. No. 30]. For the reasons set forth below, the Amended Motion to Quash Subpoena is **GRANTED**. The Defendant's Motion to Quash Plaintiff's Deposition Errata Sheet is **DENIED**.

### Defendant's Motion to Quash Errata Sheet

Plaintiff Dexter Thompson ("Thompson") was deposed on July 9, 2014. During that deposition, Thompson was asked if he had ever been a party to any sort of lawsuit before. [Dkt. No. 30-1, p. 53, line 18 to p. 54, line 4]. During the deposition, Thompson did not disclose that he had been a party to certain criminal proceedings. At the conclusion of the deposition, Thompson asserted

1

his right to read and sign the deposition transcript. Fed.R.Civ.P. 30(e)(1). Thompson timely provided a signed errata sheet for his deposition testimony. On the errata sheet, Thompson disclosed that he had been a party to a 2012 criminal proceeding in Newton County, Missouri, and a 2010 misdemeanor case in Ottawa County, Oklahoma, as well as "speeding, seat belt and other traffic violations." [Dkt. No. 30-2].

Defendants ask this Court to quash Thompson's errata sheet on the ground that it is a substantive change to his testimony beyond what is permitted under the Federal Rules of Civil Procedure.

Thompson failed to disclose his criminal cases during his deposition. On his errata sheet, he states that the additions to his testimony are made because "It's hard to remember everything." [Dkt. No. 30-2]. Courts have disregarded substantive changes to deposition testimony when the changes sought to create factual issues to avoid summary judgment. *Eg., BancFirst ex rel. Estate of M.J.H. v. Ford Motor Co.*, 422 Fed. Appx. 663 (10th Cir. 2011) (Not abuse of discretion for trial court to ignore affidavit and errata sheet that differed substantively from expert witness' initial deposition testimony); *Ruleford v. Tulsa World Pub. Co.*, 266 Fed. Appx. 778, 783 n.4 (10th Cir. 2008) (No abuse of discretion where trial court struck errata sheet to deposition testimony and granted motion for summary judgment); *Garcia v. Pueblo Country Club*, 299 F.3d 1233, 1242 n.5 (10th Cir. 2002) (Reversing grant of summary judgment while noting the Court's

"dismay" over Defendant's use of errata sheet where errata "strayed substantively from the original testimony.")  The key to these opinions is that the deposition errata sheet sought to substantively change testimony in order to create a "sham fact issue" for the purpose of avoiding summary judgment.  *Ruleford*, 266 Fed. Appx. at 783 n.4.

The instant case presents a different scenario.  Here, Plaintiff is not trying to create a sham fact issue in order to avoid summary judgment.  The case will not be decided on a dispositive motion based on Thompson's criminal record.  Rather, Thompson is attempting to supplement his deposition testimony affecting a significant, but not substantive, issue – his credibility.  Plaintiff wants to be able to cross-examine Thompson using his criminal record.  The effectiveness of that cross may be reduced if Thompson is allowed to take some of the "sting" out of his initial testimony.  The added testimony does not create sham facts and is not added to avoid summary judgment.  Furthermore, Thompson's errata sheet and his original testimony will *both* be presented to the fact-finder.  *See, Combined Energies c. CCI, Inc.*, 628 F.Supp.2d 226, 232 n.4 (D.Me. 2009) (*quoting Elwell v. Conair, Inc.*, 145 F.Supp.2d 79, 86 (D.Me. 2001)) ("[W]hen a party amends his testimony under Rule 30(e), the original answer to the deposition questions will remain part of the record and can be read at the trial.")  Thus, the fact that Thompson did not initially disclose his criminal cases will likely be presented to the fact-finder in any event.

The approach suggested by Movant TCI makes little sense, because if the errata sheet were quashed, TCI will then seek to use Thompson's criminal history to impeach him at trial. This is not a case where the moving party wants to preclude certain testimony from being admitted; TCI simply wants to be able to use the information for what it believes is maximum impeachment effect. Since both the original testimony and the errata sheet will be presented to the fact-finder, and since the deposition additions do not substantively affect evidence as to the underlying claims, the Court finds no basis to quash the errata sheet. Accordingly, the motion is **DENIED.**

## Plaintiff's Amended Motion to Quash Subpoena

This wrongful death action was filed by Thompson, in his capacity as the personal representative of the estate of his father, Troy Howard Thompson, deceased ("Decedent"). The Amended Petition alleges:

> 55. As a result of one or more of the negligent and careless acts or omissions of the Defendants, the Decedent suffered great mental pain and anguish prior to his death and his child and parents suffered damages, including medical and burial expenses, grief and loss of companionship and *great mental anguish.*
>
> 56. The Decedent was survived by his son, Dexter Thompson and his parents, Dale and Susan Thompson, who are entitled to damages for the wrongful death of the Decedent, including damages for the grief and loss of companionship suffered by each of them.

[Dkt. No. 5-1, p. 11] (emphasis added).

In the course of discovery, TCI served a Subpoena Duces Tecum on non-party ROCMND Youth Services, Inc. ("ROCMND") seeking the "complete copy of

4

your file on Dexter Lane Thompson for any visit in which he has been housed at your facility within the last 10 years." [Dkt. No. 28-2]. Plaintiff requests that the subpoena be quashed as it requests confidential and privileged psychotherapist-patient communications by Dexter Thompson when he was a minor. TCI contends that the requested information is relevant and the privilege has been waived because the Amended Petition includes a claim for "great mental anguish" separate from and in addition to the wrongful death claim.

Oklahoma law provides a privilege for confidential communications between a patient and the patient's physician or psychotherapist, and persons who are participating in the diagnosis or treatment under the direction of the physician or psychotherapist, including members of the patient's family. 12 Okla. Stat. § 2503(B). An exception to the privilege exists concerns communications "relevant to the physical, mental or emotional condition of the patient in any proceeding in which the patient relies upon that condition as an element of the patient's claim or defense...." 12 Okla. Stat. § 2503(D)(3). Defendant argues that this exception or the related doctrine of waiver apply here,[1] as Plaintiff seeks damages for "great mental anguish." Under Oklahoma's wrongful death statute, recoverable damages include the following:

---

[1] TCI initially argued in the alternative that the records requested weren't even covered by the privilege as it was not clear that ROCMND specifically provided mental health and drug/alcohol abuse treatment by licensed

5

> The mental pain and anguish suffered by the decedent, which shall be distributed to the surviving spouse and children, if any, or next of kin in the same proportion as personal property of the decedent.
>
> * * *
>
> The grief and loss of companionship of the children and parents of the decedent, which shall be distributed to them according to their grief and loss of companionship.

Okla. Stat. tit. 12 § 1053(B).

As this Court has previously recognized, the Plaintiff's mental anguish in this situation is an item of recovery, not an element of a claim. *Shreck v. N. Am. Van Lines, Inc.*, 2006 WL 1720545, *1 (N.D. Okla. June 19, 2006) (*citing Ellis v. Gurich*, 73 P.3d 860 (Okla. 2003) and *Moody v. Ford Motor Co.*, Case No. 03-CV-784-CVE-PJC, Dkt. No. 149 (N.D. Okla. August 10, 2005)). In *Ellis*, the Oklahoma Supreme Court determined that the waiver set out in Okla. Stat. tit. 12 § 1053 was generally inapplicable to a wrongful death action. 73 P.3d at 860-61. As also stated in *Shreck* and *Moody*, where the survivor's grief and emotional distress from the loss of the decedent is limited to the sort of "generic" or "garden variety" claim of the sort that would be suffered by an ordinary person in similar circumstances, the privilege has not been waived.

---

professionals. [Dkt. No. 29, pp. 5-7]. However, as set forth in the Affidavit of Dee Neel, the Assistant Executive Director of ROCMND, the evidence before the Court shows that the facility does provide mental health treatment services to family and youth by licensed professionals (or under supervision for licensure). [Dkt. No. 34-1].

Plaintiff has affirmatively stated that he did not assert an additional claim outside the wrongful death statute and is not seeking to expand the recovery available under the statute. [Dkt. No. 34]. Accordingly, the Court concludes that Plaintiff has not waived his privilege at this time. However, if it later becomes evident that Plaintiff intends to call a treating counselor or expert to testify about his mental distress, or worsening of any pre-existing condition, the Court may revisit whether or not the privilege is then waived. *Shreck*, 2006 WL 1720545 at *2 (*citing Moody, supra*).

Based on the above, the Court **GRANTS** Plaintiff's Motion to Quash [Dkt No. 28].

**ACCORDINGLY**, Defendant's Motion to Quash Errata Sheet [Dkt. No. 30] is **DENIED**; Plaintiff's Motion to Quash Subpoena [Dkt. No. 28] is **GRANTED**.

IT IS SO ORDERED this 9th day of October, 2014.

_____
Paul J. Cleary
United States Magistrate Judge