UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DEXTER THOMPSON, as Personal Representative of the Estate of Troy Howard Thompson, deceased,<br><br>    Plaintiff,<br><br>v.<br><br>TCI PRODUCTS CO. and JOHN DOE, sued as John Does I through X,<br><br>    Defendants.[1] | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 13-CV-0824-CVE-PJC |

## OPINION AND ORDER

Before the Court is the motion for summary judgment (Dkt. # 41) filed by defendant TCI Products Co. (TCI). Pursuant to Federal Rule of Civil Procedure 56, TCI requests summary judgment as to plaintiff's products liability, negligence, and breach of warranty claims. Dkt. # 41, at 4. Plaintiff responds that genuine disputes of material fact remain as to the products liability and negligence claims, but plaintiff concedes that the breach of warranty claim is not supported by evidence. Dkt. # 50, at 5, 22. Defendant has filed a reply. Dkt. # 58.

### I.

On December 9, 2012, Troy Howard Thompson was using a plasma cutter to cut lids from secondhand barrels. Dkt. # 41-1. According to plaintiff, Thompson was a "jack-of-all-trades," and he operated a variety of businesses, including a tire shop, a landscaping business, and a storage

---

[1] In the amended complaint, plaintiff also names John Does I through X as defendants, classifying them as "any designers, manufacturers, assemblers, marketers, suppliers, distributors or sellers placing the Product into the stream of commerce." Dkt. # 5-1, at 7. Plaintiff has not identified or served these parties, and the time to do so has expired. Thus, TCI is the only defendant.

facility, as well as owning a herd of cattle. Dkt. # 41-2, at 2, 5-6. Thompson's exact purpose in cutting the barrel was unknown, but another resident of the rural area in Ottawa County, Oklahoma where Thompson lived stated that secondhand barrels "have a thousand and one uses on the rural America farm." Dkt. # 41-3, at 4. This was not the first barrel the lid of which Thompson had removed that day, id. at 9, but the source of the barrels was unknown. Dkt. # 50, at 6. What is known is that one barrel exploded when Thompson began cutting it open, and the explosion reportedly rocked the surrounding area. Dkt. # 41-1. Thompson died before emergency personnel arrived. Id.

A neighbor found the lid of the barrel on the roof of a nearby outbuilding. Dkt. # 41-3, at 15. The label on the lid was no longer pristine, but it remained legible enough to be read in part. Id. at 17. The label declared the barrel to have contained "Refinisher's Choice 100% Virgin Solvents # 15, Fast Dry Acrylic Lacquer Thinner" (RC). Dkt. # 50-6. TCI manufactures RC, along with a number of similar products, for applications in the painting of vehicles. Dkt. # 41-6, at 2. RC is used both to thin paint and to clean painting equipment. Dkt. # 41-6, at 11-12. TCI does not sell RC directly either to the general public or to the businesses that paint vehicles; instead, it sells RC only to distributors, and each distributor "sells to its customers, automobile body shops." Dkt. # 50, at 5-6.

TCI knows that RC, like other products of its type, is highly flammable and explosive. Dkt. # 41-6, at 17-18; see also Dkt. # 41-7, at 1, 4. According to the company's representative, TCI has not attempted to develop a non-flammable product that could replace RC, but it notes that it does not develop paint or painting equipment; until those products are changed to accommodate a non-flammable paint thinner, developing such a product would be useless. Dkt. # 41-6, at 19-21. To

combat the obvious dangers posed by RC, TCI includes on each barrel sold a warning label,[2] as well as a Material Safety Data Sheet that outlines the hazards presented as well as safety precautions to take when using or storing RC. See id. at 23, 25-26; see also Dkt. ## 41-7, 50-6. TCI's representative also described a "closed loop" of barrels that the company thought would keep RC out of the public's hands: TCI would buy a barrel from a barrel refurbisher, fill it with RC, and sell it to a distributor; the distributor would sell the barrel of RC to a business, and the business would use the product; when the barrel was empty, the business would sell the barrel back to the refurbisher. Dkt. # 50-7, at 15-16. However, TCI makes no effort to ensure that the businesses who purchase RC from TCI's distributors actually sell the used barrels to a barrel refurbisher. Id. at 16.

Plaintiff filed his amended complaint in Oklahoma state court, and TCI removed to this Court based on diversity of citizenship. Dkt. # 5, at 1. TCI now moves for summary judgment as to all of plaintiff's claims against it.

## II.

Summary judgment pursuant to Rule 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986);

---

[2] The TCI representative testified that the same warning label has been used since at least 1996. See Dkt. # 50-7, at 12. The warning label is divided into three sections: a left section that identifies the product as RC; a right section that contains a large picture of a flame and the words "FLAMMABLE LIQUID" in large type; and a central section that has some specific warnings in smaller type. Dkt. # 50-6. Among the text in the central section are the phrase "FOR PROFESSIONAL USE ONLY" and the warning that "[e]mpty containers may contain product residue, including flammable or explosive vapors. DO NOT cut, puncture or weld on or near containers." Id. As noted above, the label on the lid of the barrel that exploded was degraded; the left section was still legible, but the center and right sections were not. See Dkt. # 50-3. However, it is unknown whether the degradation occurred before or as a result of the explosion.

3

Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

**III.**

The amended complaint alleges claims of manufacturer's products liability, negligence, and breach of warranty against TCI. Dkt. # 5-1, at 7-17. TCI moves for summary judgment as to each of these claims. Dkt. # 41, at 1. Plaintiff concedes that he does not have a viable breach of warranty

4

claim against TCI. Dkt. # 50, at 22. Summary judgment is therefore granted to TCI on plaintiff's breach of warranty claim. However, plaintiff argues that genuine issues of material fact exist to preclude summary judgment on both the products liability and negligence claims.

A. Products Liability

Plaintiff has brought a claim for manufacturer's products liability, and the amended complaint sets out both design defect and failure to warn theories of recovery. See Dkt. # 5-1, at 8. In Kirkland v. General Motors Corp., 521 P.2d 1353 (1974), the Oklahoma Supreme Court determined that Oklahoma would recognize a claim for manufacturer's products liability. A claim for manufacturer's products liability has three elements:

1) [T]he product was the cause of the injury;

2) the defect existed in the product at the time the product left the manufacturer's possession and control; [and]

3) the defect made the product unreasonably dangerous to the plaintiff or the plaintiff's property.

Clark v. Mazda Motor Corp., 68 P.3d 207, 208 (Okla. 2003). To qualify as "unreasonably dangerous," a product "must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." Swift v. Serv. Chem., Inc., 310 P.3d 1127, 1331 (Okla. Civ. App. 2013).

1. Design Defect

TCI argues that plaintiff's design defect theory must fail because plaintiff cannot show that RC was "dangerous to an extent beyond that which would be contemplated by the ordinary

consumer who purchases it." Dkt. # 41, at 12.[3] TCI argues that the ordinary consumer of RC is "an industrial paint and body shop technician extracting the product for use in thinning paint or cleaning painting equipment." Dkt. # 41, at 12. Plaintiff contends that the meaning of "ordinary consumer" extends beyond "users who a manufacturer specifically targets" and should include those, like Thompson, who acquire barrels that at one point contained RC. Dkt. # 50, at 13-14. The Oklahoma Supreme Court has defined the "ordinary consumer" as "one who would be foreseeably expected to purchase the product involved." Woods v. Fruehauf Trailer Corp., 765 P.2d 770, 774 (Okla. 1988). In Woods, the Oklahoma Supreme Court determined that the ordinary consumer of a tanker trailer designed to haul gasoline was "one who is familiar with the hazards associated with loading, transporting and unloading gasoline." Id. The Tenth Circuit, applying Oklahoma law, determined that the wife of a man who worked with a product containing asbestos was not an ordinary consumer of the product because she was not a "foreseeable purchaser or user"; her only contact with the product came through laundering her husband's clothes. Rohrbaugh v. Owens-Corning Fiberglas Corp., 965 F.2d 844, 846-47 (10th Cir. 1992) (Rohrbaugh I). Finally, the Oklahoma Court of Civil

---

[3] In its reply brief, TCI also argues that there was no evidence that RC was the cause of the injury and, thus, that plaintiff cannot prove the first element. Dkt. # 58, at 2. TCI states, but provides no evidence to show, that the experts of both parties could not determine what substance had been inside the barrel before it exploded; there was simply too little of the substance remaining. Dkt. # 41, at 4-5. However, TCI did not make this argument in its motion for summary judgment, and plaintiff did not address it in his response. When a new argument is introduced in a reply brief, a district court can avoid error either by allowing the opposing party to respond to the new argument or by not relying on the new argument. Pippin v. Burlington Res. Oil & Gas Co., 440 F.3d 1186, 1192 (10th Cir. 2006). Given the lack of evidence, the Court will ignore TCI's argument as to the first element for purposes of ruling on the motion for summary judgment.

In addition to no evidence of what was in the barrel before it exploded, there is no evidence that the barrel itself (as opposed to the lid) was originally from TCI. However, neither party raises this issue, and the Court will not rely on this absence of evidence.

Appeals recently concluded that individuals who purchased a product made of repackaged raw chemicals were not ordinary consumers of the chemicals because the manufacturer sold "technical grade" chemicals not intended for use by the public and would sell only to industrial users. Swift, 310 P.3d at 1132.

Plaintiff's case is most similar to Rohrbaugh I and Swift.[4] The parties agree that RC was intended for "use[] in the painting of automobiles and vehicles." Dkt. # 50, at 5. The parties also agree that TCI "sells its products to distributors and not end users," and that "[a] receiving distributor of TCI products sells to its customers, automobile body shops." Id. at 5-6. RC is designed to thin the paint and to clean the equipment used to paint automobiles, a specific application. Dkt. # 41-6, at 11-12. The label affixed to each barrel of RC states that it is intended "FOR PROFESSIONAL USE ONLY." Dkt. # 50-6. Thus, like in Swift, it is undisputed that TCI restricted the sale of RC to a specific type of industrial user, the automobile paint and body shop technician.[5] Even were the Court to broaden the meaning of "ordinary consumer" beyond such a technician, it would not encompass Thompson. Fundamentally, Thompson was intent on acquiring the used barrel so that he could transform it for his own purposes; the contents of the barrel were irrelevant. As in

---

[4] Plaintiff attempts to distinguish Swift, arguing that it would relieve from liability not TCI but the company that sells TCI the chemicals used to manufacture RC. Dkt. # 50, at 16. Plaintiff is correct in that Swift would preclude finding TCI's chemical supplier liable. However, plaintiff ignores that TCI does not simply repackage the chemicals and sell them to the public. Like the defendant in Swift, TCI makes RC for a specific industrial use and sells it to distributors for further sale to industrial users. Dkt. # 50, at 5-6. Thus, Swift is applicable.

[5] Plaintiff notes that plaintiff's counsel was able "to purchase with little effort" a barrel of RC. Dkt. # 50, at 14 n.5. However, plaintiff does not state that plaintiff's counsel purchased RC from TCI or one of its distributors, and so the act does not undercut the undisputed facts as to TCI's restrictions on the sale of RC.

Rohrbaugh I, there is no evidence that Thompson ever intended to or would purchase RC. He thus cannot be considered "one who would be foreseeably expected to purchase the product involved," Woods, 765 P.2d at 774; to so find would expand the meaning of "foreseeable" beyond the bounds of Oklahoma law. The Court finds that the ordinary consumer of RC is the automobile paint and body shop technician, as that is the person who would foreseeably purchase and use RC.

Having resolved the nature of the ordinary consumer, the Court must now determine whether RC was "dangerous to an extent beyond that which would be contemplated by" that consumer. See Swift, 310 P.3d at 1331. It is undeniable that solvents like RC present a danger of explosion, even-- or especially--when most of the solvent has been removed from the storage container. See Dkt. # 41-7, at 4 (stating that "[v]apors may ignite explosively . . . . Prevent vapor buildup."); Dkt. # 50-10, at 4-6 (repeatedly describing a barrel of full of solvent vapors as a bomb). However, the question before the Court is not whether RC was dangerous; it is whether TCI's decision to design RC as it did made RC less safe than the ordinary consumer would expect. See Woods, 765 P.2d at 774 ("[T]he proper question here is whether the evidence established that the failure to so equip . . . rendered it less safe than expected by one who would foreseeably be using the tanker for a foreseeable purpose."); see also Prince v. B.F. Ascher Co., Inc., 90 P.3d 1020, 1026 n.5 (Okla. Civ. App. 2004) ("Evidence that a product could be made 'safer' does not establish that it was less safe than would be expected by the ordinary consumer." (citing Woods, 765 P.2d at 775)). The tanker trailer in Woods did not come equipped with an automatic shutoff nozzle; as a result, gasoline could overflow the tank and, as occurred in that case, cause a fire. Woods, 765 P.2d at 774. However, the Oklahoma Supreme Court concluded that the ordinary consumer would not have needed such a nozzle to operate the tanker trailer safely, meaning the tanker trailer was not "less safe than would

8

be expected by the ordinary consumer." Id. at 775. The plaintiff in Braswell v. Cincinnati Inc., 731 F.3d 1081 (10th Cir. 2013), lost his arm after it was caught in a machine used to shape sheet metal. Braswell, 731 F.3d at 1082-83. The Tenth Circuit, applying Oklahoma law, determined that the ordinary consumer of the machine was a trained operator, and such an individual would have been aware of the level of danger posed by the machine. Id. at 1089. The trained operator would not have reached into the machine without using safety precautions and, thus, did not need additional protections to operate the machine safely.[6] Id.

The present situation is similar to Woods and Braswell. Describing paint thinners like RC, TCI's representative stated: "[W]ell, they're all dangerous. Solvents are dangerous inherently." Dkt. # 50-7, at 4. He also noted that RC contains methanol, a substance he characterized as "explosive, an extreme solvent." Id. at 3. However, paint thinners on the market that are similar to RC contain as much or more methanol. Id.; see also Dkt. # 41-6, at 7 (noting that the mixture of chemicals in RC was not unique). The ordinary consumer of RC would therefore expect it to be highly flammable and potentially explosive. See Dkt. # 41-7 (RC's Material Safety Data Sheet, which was included with the product when sold, repeatedly described RC as "[e]xtremely flammable liquid and vapor" and noted that "[v]apors may ignite explosively"). Like the ordinary consumers of the machine in Braswell and the tanker trailer in Woods, the ordinary consumer of RC would be aware of the danger it posed and would take appropriate safety precautions. Thus, RC is not "dangerous to an extent

---

[6] Plaintiff attempts to distinguish Braswell on the grounds that Braswell knew the risks of his actions, that there were available warnings, and that the manufacturer included safety devices that had been removed. Dkt. # 50, at 18. While these distinctions may be relevant to other elements of a products liability claim, the Court cites Braswell solely for its discussion of the expectations of the ordinary consumer. Plaintiff does not attempt to distinguish this aspect of Braswell. See id. at 17-18.

9

beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." Swift, 310 P.3d at 1331. Plaintiff's claim for manufacturer's products liability cannot rest on a theory of defective design.

### 2. Failure to Warn

Plaintiff also argues that TCI is liable for failing to warn Thompson of RC's dangers. In addition to defective design, a plaintiff may attempt to show that a product is defective due to the manufacturer's failure to warn consumers "of potential dangers which may occur from the use of the product when it is known or should be known that hazards exist." McKee v. Moore, 648 P.2d 21, 23 (Okla.1982). A manufacturer may be liable due to a complete failure to warn or for providing an inadequate warning, but a manufacturer is "not required to foresee that consumers will fail to read the product's warning and then use the product in a manner that the instructions warn against." Prince v. B.F. Ascher Co., Inc., 90 P.3d 1020, 1027 (Okla. Civ. App. 2004) (citing Hutchins v. Silicone Specialties, Inc., 881 P.2d 64, 67 (Okla. 1993)). "Th[e] duty to warn . . . only extends to ordinary consumers and users of the products." Rohrbaugh I, 965 F.2d at 846 (citing Woods, 765 P.2d at 774). A failure to warn claim is not permitted when the user knows of the potential danger from using the product and uses the product in a potentially dangerous manner. Duane v. Oklahoma Gas & Elec. Co., 833 P.2d 284 (Okla. 1992) ("[T]here is no duty to warn a knowledgeable user of the product of the dangers associated therewith").

The Tenth Circuit's decision in Rohrbaugh I controls this theory of liability. As discussed above, the Tenth Circuit applied Oklahoma law to determine whether a manufacturer of a product containing asbestos was liable to a woman exposed to asbestos through her husband's clothing. Rohrbaugh I, 965 F.2d at 846. The Tenth Circuit determined that the manufacturer "did not have a

duty to warn Mrs. Palmer of the dangers associated with their products because Mrs. Palmer was not a foreseeable purchaser or user of the product." Id. In other words, the Tenth Circuit limited the duty to warn to ordinary consumers. Id. The Tenth Circuit has reaffirmed Rohrbaugh I, and specifically the conclusion that under Oklahoma law there is no duty to warn those who are not the ordinary consumer of a product. See Rohrbaugh v. Celotex Corp., 53 F.3d 1181, 1183 (10th Cir. 1995) (Rohrbaugh II); Carel v. Fibreboard Corp., 74 F.3d 1248, at *3 (10th Cir. 1996) (unpublished); see also Bootenhoff v. Hormel Foods Corp., No. CIV-11-1368-D, 2014 WL 3810329, at *4-5 (W.D. Okla. Aug. 1, 2014) (granting summary judgment to manufacturer because the plaintiff was not an ordinary consumer). This Court has determined that the ordinary consumer of RC is an automobile paint and body shop technician. There is no evidence that Thompson, although a man of wide interests and many businesses, was such a person. See Dkt. # 41-2, at 5-6 (noting that Thompson operated a tire service, a storage facility, and a landscaping service, as well as owning cattle). Moreover, there is no evidence that, even though he was not such a technician, he purchased the secondhand barrel because it contained RC or its residue. Thompson was not an "ordinary consumer" of RC and, thus, TCI had no duty to warn him of the danger of RC.

Plaintiff agrees that a manufacturer's duty to warn extends only to ordinary consumers but argues that there is a factual dispute as to whether Thompson "knew or should have known of the risk of cutting into an unmarked 'empty' barrel." Dkt. # 50, at 13-14. In this, plaintiff is rebutting an argument that TCI did not make, namely that TCI did not know that individuals other than ordinary consumers were purchasing barrels used to hold RC and then modifying them. However, the acquisition of the product by non-ordinary consumers does not alter the Tenth Circuit's decision that the duty to warn extends only to ordinary consumers. Rohrbaugh I, 965 F.2d at 846. Plaintiff

presents no evidence--and virtually no argument--that Thompson was an ordinary consumer of RC. See id. Plaintiff's failure to warn theory cannot succeed.

The parties expend much effort debating the adequacy of the warning attached to the barrel, but the Court need not reach that issue. Plaintiff claimed that TCI bears liability as the manufacturer of RC, both because RC was defectively designed and because TCI failed to warn Thompson of RC's dangers. Dkt. # 5-1, at 8. However, RC was not "unreasonably dangerous," as that term has been interpreted by Oklahoma courts, and as a result RC was not defectively designed. Furthermore, TCI had no duty to warn Thompson because he was not an "ordinary consumer" of RC. The Court grants summary judgment in favor of TCI on plaintiff's claim for manufacturer's products liability.

### B. Negligence

Plaintiff has also brought a claim against TCI for negligence, alleging that TCI breached its duty of care to protect the public from RC's dangers by putting RC into the stream of commerce. Dkt. # 5-1, at 11-14. Oklahoma allows plaintiffs to assert a negligence claim, in addition to a manufacturer's products liability claim, when injured by a product. Honeywell v. GADA Builders, Inc., 271 P.3d 88, 96 (Okla. Civ. App. 2011) ("Even with the advent of strict products liability, the negligence cause of action remains available to a plaintiff injured by a defective product."). "Under Oklahoma law, the three essential elements of a claim of negligence are: '(1) a duty owed by the defendant to protect the plaintiff from injury, (2) a failure to properly perform that duty, and (3) the plaintiff's injury being proximately caused by the defendant's breach.'" Gaines-Tabb v. ICI Explosives, USA, Inc., 160 F.3d 613, 620 (10th Cir. 1998) (quoting Lockhart v. Loosen, 943 P.2d 1074, 1079 (Okla. 1997)). TCI argues that it owed no duty of care to Thompson and, as a result, summary judgment in its favor is warranted. See Dkt. # 41, at 24. Plaintiff contends that a genuine

dispute of material facts exists to bar a grant of summary judgment on his negligence claim. Dkt. # 50, at 21. "Whether a duty of care exists in a particular case is a question of law for the court to determine." Swift v. Serv. Chem., Inc., 310 P.3d 1127, 1333 (Okla. Civ. App. 2013) (citing Prince v. B.F. Ascher Co., Inc., 90 P.3d 1020 (Okla. Civ. App. 2004)).

"In determining the legal question of the existence of a duty of care, the court considers policy factors that lead the law to say a particular plaintiff is entitled to protection." Lowery v. Echostar Satellite Corp., 160 P.3d 959, 964 (Okla. 2007) (citing Iglehart v. Bd. of Cnty. Comm'rs of Rogers Cnty., 60 P.3d 497, 502 (Okla. 2002)). The Oklahoma Supreme Court has identified six policy factors relevant to the existence of a duty of care:

> 1) [F]oreseeability of harm to the plaintiff, 2) degree of certainty of harm to the plaintiff, 3) moral blame attached to defendant's conduct, 4) need to prevent future harm, 5) extent of the burden to the defendant and consequences to the community of imposing the duty on defendant, and 6) availability of insurance for the risk involved.

Id. at 964 n.4 (citing Iglehart, 60 P.3d at 502).

"The most important consideration in determining the existence of a duty of care is foreseeability of harm to the plaintiff." Id. at 964. Oklahoma courts have spoken of the "zone of risk" created by a defendant's actions as determinative of the foreseeable risk of harm. E.g., id.; Moran v. City of Del City, 77 P.3d 588, 592 n.4 (Okla. 2003); Delbrel v. Doenges Bros. Ford, Inc., 913 P.2d 1318, 1321 (Okla. 1996) ("The focus of the duty element of negligence is on whether the defendant's conduct creates a broader 'zone of risk' that poses a general threat of harm to others."). Although neither party addressed the case, the Tenth Circuit's decision in Rohrbaugh II appears to govern the foreseeability of harm to Thompson. Recall that in Rohrbaugh I the appellate court determined that the plaintiff was not an ordinary consumer of the asbestos-containing product that

13

caused her injury; therefore, the product's manufacturer had no duty to warn her of the product's dangers. Rohrbaugh I, 965 F.2d at 846-47. The Tenth Circuit remanded the case to the district court, which thereafter granted summary judgment against the plaintiff on both her products liability and negligence claims. Rohrbaugh II, 53 F.3d at 1182. The plaintiff appealed again, and the Tenth Circuit affirmed the result for the products liability claim under the law of the case doctrine. Id. As to plaintiff's negligence claim, the Tenth Circuit stated that "because Mrs. Palmer was not a foreseeable consumer, the negligence claim cannot be maintained." Id. at 1183. It further elaborated: "Because of our holding in *Rohrbaugh I* that Mrs. Palmer was not a foreseeable purchaser or user of the product . . . and that Defendants 'could not have foreseen that Mrs. Palmer would be exposed to their products in the manner in which she was[,]' the threshold question of duty is not satisfied." Id. at 1184. In other words, foreseeability for purposes of a negligence claim related to a product, like the duty to warn in a manufacturer's product's liability claim, depends on the person harmed being an ordinary consumer of the product. As detailed above, the ordinary consumer of RC is an automobile paint and body shop technician. Thompson was not an ordinary consumer of RC. Thus, following Rohrbaugh II, TCI could not have foreseen that Thompson would encounter danger from RC.

Plaintiff cites Delbrel as support for its argument that Thompson was within the "zone of risk" of RC. See Dkt. # 50, at 21. In that case, the plaintiff was injured while trying to push a disabled vehicle that the defendant had recently repaired. Delbrel, 913 P.2d at 1319. Discussing whether the defendant owed the plaintiff a duty of care, the Court distinguished between foreseeability as it applied to the duty of care and proximate cause: "Foreseeability as an element of duty of care creates a 'zone of risk' and is a minimum threshold legal requirement for opening

14

the courthouse doors. Foreseeability as an element of proximate cause is a much more specific factual requirement that must be proved to win the case once the courthouse doors are open." Id. at 1322 (citations omitted). Noting that the case was "not one of first impression," the Court found that three prior cases supported the conclusion that a repairer owed a duty of care to "a person who could foreseeably be injured by the appellee's negligent failure to repair or warn against a dangerous condition concerning the vehicle." Id. at 1321. The Court concluded that "[t]he public, of which the appellant is a member, is within the zone of risk of negligently repaired vehicles." Id.

While Delbrel is instructive as to the "zone of risk" concept, it does not support plaintiff's argument that Thompson was within RC's zone of risk. Although it did not explain this in detail, the Oklahoma Supreme Court apparently found the public to be within the zone of risk of a negligently repaired vehicle because such a vehicle could, when returned to its owner, cause an accident with the potential to affect anyone traveling on a public street. See id. The crucial point is that the repairer affirmatively exposed the public to the vehicle by returning it to its owner without "assur[ing] that the repair is properly performed or the owner is warned of [the vehicle's] dangerous condition." Id. However, the same is not true here. Plaintiff agrees that TCI sold RC to distributors, who in turn sold it to paint and body shops. Dkt. # 50, at 5-6. There is no evidence that TCI has ever affirmatively allowed RC to be distributed to the general public. Furthermore, TCI informed its ordinary consumer of RC's dangers by applying a warning label and including with the barrel a Material Safety Data Sheet. See Dkt. ## 41-5; 41-7. At most, Delbrel would circumscribe the zone of risk of RC to include those who are employed by or are physically present at a business that paints vehicles, which is the only location where RC could foreseeably cause an injury. Thompson's accident was at least one step removed from that scenario, however, as it occurred on his property

15

after he acquired from an unknown source a barrel that, it is assumed, at one point held RC. See Dkt. # 50, at 6.

Plaintiff makes much of the TCI representative's description of the use of a "closed loop" of barrels to ensure that RC does not reach the public. See Dkt. # 50, at 18-19. When asked, TCI's representative stated that, although it is hoped that the businesses that purchased RC would return the barrel to a barrel refurbisher, TCI makes no effort to ensure that they do so. Dkt. # 50-7, at 15-16. Plaintiff argues that, because there was no impediment to a vehicle painting business selling or giving to Thompson the nearly-empty barrel that is assumed to have contained RC, Thompson was within the zone of risk of RC. Dkt. # 50, at 19-20. At the least, plaintiff says, there exists a dispute of fact as to whether TCI took reasonable steps to prevent the public from coming into contact with RC. Dkt. # 50, at 20. However, plaintiff's argument asks the Court to expand the zone of risk concept to the point that it is meaningless. The Oklahoma Supreme Court has directly tied the zone of risk to the foreseeability of injury. See Delbrel, 913 P.2d at 1121. If it is foreseeable that a member of the public who acquires a product, no matter how or from whom, and is injured by the product is within the zone of risk for that product, then the zone of risk for every product will necessarily include the public. At that point, the question of foreseeability of injury becomes irrelevant whenever a product is involved; any injury would be foreseeable, because the injured person would be within the zone of risk of the product merely by having acquired the product. The zone of risk for some products, like the repaired vehicle in Delbrel, must necessarily include the public, either because they are marketed to the public, they are operated in public, or some other factor. However, that does not mean that every product's zone of risk includes the public, and RC is such a product. The Court finds that the risk of harm to Thompson from RC was not foreseeable.

The remaining policy considerations do not support a finding that TCI owed a duty of care to Thompson. See Lowery, 160 P.3d at 964 n.4. As the risk of harm was not foreseeable, the harm was not certain. See Bootenhoff v. Hormel Foods Corp., Case No. CIV-11-1368-D, 2014 WL 3744011, at *13 (W.D. Okla. July 30, 2014). For the same reason, there can be no moral blame attached to TCI's conduct. The potential for future harm is uncertain; TCI's representative stated that he had never heard of an explosion like the one that killed Thompson, see Dkt. # 41-6, at 21, but one of plaintiff's experts testified to knowing of others, albeit without providing specific examples. See Dkt. # 50-10, at 1-2. Imposing a duty on TCI could, as discussed above, have potentially large consequences for both it and all manufacturers. The Court cannot determine from the evidence presented whether insurance for this type of risk would be available.

The Court, having considered the policy factors outlined by the Oklahoma Supreme Court, finds that TCI did not owe a legal duty of care to Thompson. As a result, plaintiff cannot prove the first element of a claim of negligence. See Gaines-Tabb, 160 F.3d at 620. Summary judgment is appropriate in favor of TCI as to plaintiff's negligence claim.

**IT IS THEREFORE ORDERED** that TCI's motion for summary judgment (Dkt. # 41) is hereby **granted**.

**IT IS FURTHER ORDERED** that all pending motions and objections (Dkt. ## 45, 46, 48, 59, 61, 62, and 66) are hereby **moot**.

**IT IS FURTHER ORDERED** that this constitutes a final order terminating this case. A separate judgment will be entered herewith.

**DATED** this 26th day of January, 2015.

_Claire V. Eagan_
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE